IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

**REPORT AND
RECOMMENDATION**

v.

12-CR-00183-EAW-JJM-6

JERRILEE SMITH,
                          Defendant.
_____

   Defendant Jerrilee Smith is charged along with 31 co-defendants in a June 8, 2012

Indictment containing 62 counts [1].[1]  Before me is her motion[2]  to dismiss the Indictment on Sixth

Amendment speedy trial grounds.  Brown Affirmation [475], Point I.[3]  That motion, being

dispositive, has been referred to me for a Report and Recommendation [5].[4]  Oral argument was

initially held on January 6, 2015, and at that time I determined that an evidentiary hearing was

necessary to resolve defendant's motion [494].  The evidentiary hearing was held on February 11

and April 29, 2015 [519, 536],  followed by the parties' post-hearing briefs [542, 543, 545] and

further oral argument on September 8, 2015 [547].  Thereafter, the parties made additional

submissions [551, 552].  For the following reasons, I recommend that the motion be denied.

---

[1]  Bracketed references are to the CM/ECF docket entries.

[2]  The pretrial motions those co-defendants who have been arraigned and not pled guilty
have been addressed in prior decisions.  *See* [288, 298, 418, 425, 426, 428, 433, 453, 454, 481, 482, 534].

[3]  Defendant's counsel agreed at the September 8, 2015 oral argument that all other
portions of defendant's pretrial motion [475] are resolved.

[4]  On January 28, 2015 this case was reassigned from District Judge William M. Skretny to
District Judge Elizabeth A. Wolford [507].

**BACKGROUND**

Defendant, a Canadian citizen residing in Canada,  is charged in Counts 1 and 47 of the Indictment with conspiracy to commit wire fraud and to launder monetary instruments, in violation of 18 U.S.C. §§1349 and 1956(h).  The Indictment was unsealed on July 10, 2012.  *See* July 10, 2010 Minute Entry. A United States Department of Homeland Security Fugitive Report for defendant was prepared on July 17, 2012 [492-2], and her arrest warrant was entered with the National Crime Information Center ("NCIC") the following day [492-3].

Defendant's sister, Tara Smith, is named as a co-defendant in the Indictment.  She was arrested in San Diego, California on July 11, 2012, and was arraigned before me on July 26, 2012 [1, 28,  52].  During a November 19, 2012 proffer session with Tara Smith, she provided law enforcement with defendant's telephone number.  Government's Post-Hearing Memorandum of Law [543], p. 19; Defendant's Post-Hearing Reply Memorandum of Law [545], p. 4.

Although extradition was sought against twelve Canadian co-defendants, the government did not seek defendant's extradition from Canada because Special Assistant United States Attorney ("SAUSA")  Fauzia Mattingly "believed, based on discussions with Tara Smith's counsel, that there was a possibility the defendant was going to turn herself in". Government's Post-Hearing Memorandum of Law [543], p. 20.  On October 17, 2013, SAUSA Carol Bridge assumed the prosecution of this case from SAUSA Mattingly. Government's Post-Hearing Memorandum of Law [543], p. 20.

In June 2014 Special Agent ("SA") Sean Needham called defendant and asked her if she would turn herself in.  Government's Response [492], pp. 4-5, ¶7  On or about July 1, 2014,

she agreed to turn herself in, and was arraigned before me on July 8, 2014. (id.).  At no point were

due diligence reports filed by the government or requested by the court.

At defendant's arraignment, I issued a Scheduling Order requiring her pretrial

motions to be filed by November 7, 2014. [421], ¶2.  On October 31, 2014, defendant moved  to

dismiss the Indictment on Sixth Amendment speedy trial grounds arising from the delay between

the return of the Indictment and when efforts were undertaken in June 2014 to execute the arrest

warrant.  Brown Affirmation [475], Point I.  At the evidentiary hearing on this issue, the following

testimony was elicited:

**Defendant** testified that she was born in 1985 in  Zimbabwe and moved to

Canada at age 8. February 11, 2015 hearing transcript [519], pp. 5-6. Defendant had no previous

arrests or legal training (id., pp. 11-12).

In the summer of 2012, defendant learned from her mother, Sophia Humphrey, that

her sister, Tara Smith, had been arrested for fraud (id., pp. 10-11).  Defendant testified that a week

or two after Tara's arrest, she spoke to a lawyer in California "[t]o call my mom to find out what is

going on" (id., p. 54).

From the time of Tara's arrest until June 2014, defendant spoke to her sister

approximately two to three times per month and to her mother once or twice a week (id., pp. 11-

12).  Defendant testified that neither her mother nor sister ever told her that she was named as a

defendant in connection with her sister's arrest (id., pp. 11-13).  She also did not discuss the fraud

charge with her sister, since she "was told that [her sister] is not allowed to discuss the case" (id.,

p. 11). Defendant never learned the details of Tara Smith's alleged fraud (id., pp. 11, 20, 24-25).

However, defendant admitted that her mother told her that, "Tara told me you would know what this was about", but she did not tell her mother anything in response, since she did not know exactly what her sister was being charged with (id., p. 26).  She also conceded that when her mother told her that her sister had been arrested, she also told defendant that Tara Smith said that her name was on a list, but neither her nor her  mother knew what list she was talking about, and defendant never did anything to investigate what she was referring to (id., pp. 27, 55-56, 60).  Defendant did not fear that the list was related to her sister's arrest (id., p. 59) and denied researching her sister's case on the internet (id., p. 37).

Defendant's mother and sister lived in Detroit until August 2010, and then moved to California before returning to Detroit in November 2012 (id., pp. 37, 50-51).  Meanwhile, defendant lived in Windsor, Ontario until moving to Toronto, Ontario in 2009 (id., pp. 37-38). Defendant acknowledged that between 2007 and 2009 she frequently visited her mother and sister in Detroit and that border crossing records accurately reflected that she crossed 37 times in 2007, 38 times in 2008, and 57 times in 2009 (id., pp. 38-42).   Her travel to the United States decreased during the subsequent two years, with 12 crossings in 2010 (id., pp. 42-43) and trips to California (to visit her sister and mother) and Las Vegas in 2011 (id., p. 43).  Defendant testified that her travel to the United States ceased thereafter because she was  attending school, working various jobs with probationary periods, and had limited resources (id., pp. 13, 43, 47, 49-51).   Her mother and sister also did not travel to Toronto over the last couple of years to visit her (id., p. 61).

Defendant testified that prior to being called by SA Sean Needham in 2014, she did not know that there was a warrant for her arrest  (id., p. 14).  Defendant had the same cell phone assigned to her for the past four to five years and  resided at the same address in Toronto since

2012 (id., pp. 9-10).  She acknowledged that she was friends with  co-defendants Krystal Ashley

Ewan and Shawna Maingot, who both resided in Canada, but last spoke to them five to six years

ago (id., pp. 14, 28, 35).

**Sophia Humphrey** testified that following Tara Smith's  arrest she called

defendant and told her that she was arrested for "something to do with picking up money" (id., pp.

76, 97).  She also told her that Tara Smith had "mentioned something about a guy by the name of

P", who Ms. Humphrey recalled was defendant's friend (id., pp. 77-78).  Other than crying,

defendant did not respond to what Ms. Humphrey told her (id.).

Shortly after Tara Smith's arrest, Ms. Humphrey spoke to an attorney that she was

attempting to retain for her daughter, who advised her that defendant "is on the same list of

suspects" as her sister and that "[t]he case was on the internet" (id., pp. 81-82, 99-100). Ms.

Humphrey relayed this to defendant (id.).  In response, defendant acknowledged that "she saw this

information on the news as well" (id., pp. 82, 90, 99-100).  Ms. Humphrey did not delve into

defendant's involvement, since she was "really concerned" about getting Tara Smith out of jail

(id., pp. 83, 100).  She reviewed the news article on the internet, but her daughters were not

mentioned (id., p. 82).  During the week following Tara Smith's arrest, Ms. Humphrey spoke to

defendant daily (id. p. 83).

At Tara Smith's initial appearance in this Court on July 26, 2012, her appointed

attorney, Lawrence Desiderio, Esq., provided her with a copy of the Indictment, which she shared

with Ms. Humphrey (id., p. 87).  Although Ms. Humphrey saw that defendant was also named in

the Indictment, she did not share that information with her, since Mr. Desiderio told her that they

"were not to discuss this case with anyone and specifically with anyone on this list" (id., pp. 88-89, 92).

Ms. Humphrey testified that she currently resides in Detroit, but had resided in California from May to October 2012, and in Dearborn Michigan from 2006 to May 2012 (id., pp. 68-69). Ms. Humphrey did not recall defendant visiting her while she resided in California, and had last visited with her in the United States in 2009 or 2010 (id., p. 93).

**Tara Smith** testified that while she was detained in the week following her July 11, 2012 arrest, she told her mother that she believed that her charges were about money she collected for her sister and transported across the border. April 29, 2015 hearing transcript [536], pp. 114, 124.[5] Tara Smith was concerned about defendant, since she mentioned her during questioning and "they asked about her, so [she] assumed that [defendant] was involved" (id., pp. 117, 124-25). However, Tara Smith denied telling her mother to contact her sister (id., pp. 116-17). Tara Smith did not recall her mother mentioning that defendant's name was on a list (id., p. 129).

During the week following her release from detention and prior to her July 26, 2012 arraignment, Tara Smith told her mother what she had told the police (id., pp. 124-25). During that same period, defendant called her and she apprised defendant of the nature of the charges, but did not tell her what she had told the police, since "I knew not to discuss my situation with anybody" (id., p. 125). At that time, no one advised Tara Smith not to discuss the details of her case with her sister, she "made the decision all [her]self" (id., p. 126). Tara Smith testified that

---

[5]     Although docketed as a separate transcript, the transcripts were sequentially paginated.

defendant did not tell her that she saw the case on the internet or indicate that she was worried about being charged (id., pp. 126-27).  Following her July 26, 2012 arraignment in this District, Tara Smith was provided with the Indictment and saw that defendant was also named in the Indictment, but did not speak to her sister about it (id., p. 130).

Prior to her July 11, 2012 arrest, Tara Smith had received a telephone call from a law enforcement agent inquiring whether she had picked up money (id., p. 138).  After she received that call, she informed her sister, who told her "[b]asically not to mention P's name" (id., p. 139).

## ANALYSIS

The Sixth Amendment requires the government "to make a diligent, good faith effort to bring a defendant to trial promptly".  United States v. Blanco, 861 F.2d 773, 778 (2d Cir. 1988), cert. denied, 489 U.S. 1019 (1989).  "The right established by the Speedy Trial Clause of the Sixth Amendment has been described . . . as 'amorphous, slippery, and necessarily relative.' . . . It neither prohibits all delays, nor establishes a strict time limit between the announcement of a charge and the commencement of trial."  United States v. Ray, 578 F.3d 184, 191 (2d Cir. 2009), cert. denied, 559 U.S. 1107 (2010) (quoting Vermont v. Brillon, 556 U.S. 81, 89 (2009)).

In reviewing a defendant's motion to dismiss an indictment for violating the Speedy Trial Clause of the Sixth Amendment, courts examine four factors: "[1]whether delay before trial was uncommonly long, [2] whether the government or the criminal defendant is more to blame for that delay, [3] whether, in due course, the defendant asserted his right to a speedy trial, and [4]

-7-

whether he suffered prejudice as the delay's result." Doggett v. United States, 505 U.S. 647, 651 (1992) (*citing* Barker v. Wingo, 407 U.S. 514, 530 (1972)).  "The first factor . . . is in effect a threshold question: 'by definition, a defendant cannot complain that the government has denied him a 'speedy' trial if it has, in fact, prosecuted his case with customary promptness.'" United States v. Cain, 671 F.3d 271, 296 (2d Cir. 2012), cert. denied, __U.S.__,134 S.Ct. 56 (2013), rehearing denied, __ U.S.__, 134 S.Ct. 733 (2013) (*quoting* Doggett, 505 U.S. at 652).  Once the first factor is satisfied,  the court "must proceed to balance the four . . . factors, remaining mindful that 'they are related factors' with 'no talismanic qualities' that 'must be considered together with such other circumstances as may be relevant'". United States v. Ghailani, 733 F.3d 29, 43 (2d Cir. 2013), cert. denied,  __ U.S. __, 134 S.Ct. 1523 (2014) (*quoting* Barker, 407 U.S. at 533).

A.    **Length of Delay**

"The first [factor] is actually a double enquiry. Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from a 'presumptively prejudicial' delay . . .  since, by definition, he cannot complain that the government has denied him a 'speedy'  trial if it has, in fact, prosecuted his case with customary  promptness. If the accused makes this showing, the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." Doggett, 505 U.S. at 651-52.

"Depending on the nature of the charges, the lower courts have generally found post accusation delay 'presumptively prejudicial' at least as it approaches one year".  Id. at 652

n.1. *See* United States v. Vassell, 970 F.2d 1162, 1164  (2d Cir.), cert. denied, 506 U.S. 1009

(1992) ("One commentator discerns a general consensus that a delay of over eight months meets

this standard, while a delay of less than five months does not", *citing* Gregory P.N. Joseph, Speedy

Trial Rights in Application, 48 Fordham L.Rev. 611, 623 n. 71 (1980)).  The parties agree that a

24 month delay occurred[6]  and that this delay "is sufficient to warrant analysis of the Barker

factors".  Government's Post-Hearing Memorandum of Law [543], pp. 17-18; Defendant's Post-

Hearing Memorandum of Law [545], p. 4.

"Still, while presumptively prejudicial and certainly troubling, the delay here

remains within a time period where the Second Circuit has found no violation."  United States v.

Phalom, 2013 WL 3821757,  *3 (W.D.N.Y. 2013) (Skretny, J.) (addressing a delay of 38 months

or more (*citing* Flowers v. Warden, Connecticut Correctional Institution, 853 F.2d 131, 133 (2d

Cir.), cert. denied, 488 U.S. 995 (1988) (collecting cases where no speedy trial violations were

found for delays ranging from 2 years months to 6 years)). *See also* United States v. Solomon,

---

[6]        Notwithstanding the parties' agreement that the delay was approximately 24 months and
that the period of delay ended in June 2014, when defendant was contacted by SA Needham, they
disagree as to when the delay commenced.  Whereas defendant measures the delay as commencing from
the return of the Indictment on June 8, 2012  (defendant's Memorandum of Law [491], p. 2 of 6), the
government uses the unsealing of the Indictment on July 10, 2012.  Government's Post-Hearing
Memorandum of Law [543], pp. 17-18.  Although this amounts to a nominal difference,  I agree with the
government.  *See* United States v. Moreno,  789 F.3d 72, 78 (2d Cir. 2015) (the Sixth Amendment is
"'triggered by arrest, indictment, or other official accusation' . . .  or (in cases such as this) by the
unsealing of a sealed indictment").   United States v. Watson, 599 F.2d 1149, 1156 (2d Cir. 1979),
opinion amended on rehearing, 690 F.2d 15 (1979), opinion modified on rehearing, 633 F.2d 1041
(1980), cert. denied, 450 U.S. 984 (1981) ("[T]he speedy trial right under  the Sixth Amendment attaches
not when a sealed indictment is filed but when it is unsealed (or when the Government arrests the
defendant or otherwise apprises him of the charges against him)").

1996 WL 399814,  *4 (S.D.N.Y.  1996) (finding a 20-month delay "presumptively prejudicial",

but not "uncommonly long").

Defendant  attempts to enhance the 24 month period of delay by arguing that her

arrest came "more than three years following the date of the last activity alleged in the indictment".

Defendant's Post-Hearing Reply Memorandum of Law [545], pp. 10-11.  "[P]reindictment delay

may have [s]ome relevance to the analysis of the speedy trial right".  Watson, 599 F.2d at 1157.

However, here, the period of pre-indictment delay of approximately one year (measured from the

last alleged criminal activity in or about May 2011 (see Indictment [1], Counts 1 and 47) to the

return of the Indictment on June 6, 2012) is substantially shorter than the duration of pre-

indictment delay other courts have found to be relevant to the post-indictment analysis.[7]

Nevertheless, even including the pre-indictment delay, the total delay would still fall within the

time frame as to which the Second Circuit has found no Sixth Amendment violation. See Flowers,

853 F.2d at 133.


**B.      Reasons for the Delay**

Although no single factor is controlling, "[t]he flag all litigants seek to capture is

the second factor, the reason for delay". United States v. Loud Hawk,  474 U.S. 302, 315 (1986).

---

[7]       Compare with  United States v. Vispi, 545 F.2d 328, 333 (2d Cir.1976) ("It is relevant
that the 20–month [post-indictment] period was immediately preceded by a period of approximately 4 to
5 years between the government's discovery of the alleged offense and its filing of the information");
United States v. Leaver,  358 F.Supp.2d 255, 269 (S.D.N.Y. 2004) ("It is particularly clear that the delay
was uncommonly long in light of the five years that had already elapsed between the alleged crime and
the indictment"); United States v. Ingram,  446 F.3d 1332, 1339 (11th Cir. 2006) (where the pre-
indictment delay was two and one-half years, the court concluded that "the two-year post-indictment
delay in this case weighs more heavily than a two-year delay in another case might if, in that case, the
post-indictment delay began shortly after the allegedly criminal acts occurred").

"Whenever an individual has been officially accused of a crime, not only is the government charged with the burden of bringing the accused swiftly to trial, but it is under an obligation to exercise due diligence in attempting to locate and apprehend the accused." United States v. Moreno, 789 F.3d 72, 79 (2d Cir. 2015).  "[W]hile a defendant's status as a fugitive will not relieve the state of its sixth amendment obligations, law enforcement officials are not expected to make heroic efforts to apprehend a defendant who is purposefully avoiding apprehension or who has fled to parts unknown." Rayborn v. Scully,  858 F.2d 84, 90 (2d Cir. 1988), cert. denied, 488 U.S. 1032 (1989).  Thus, where a defendant attempts to avoid apprehension while a fugitive, the second Barker factor may weigh in the government's favor. See  United States v. Valiente-Mejia, 2009 WL 3401210, *8 -9  (S.D.N.Y. 2009).  However, "[w]here a defendant is not attempting to avoid being tried, and does nothing to frustrate attempts to bring him to this country to face such a trial, delay by the government in initiating extradition procedures is properly attributed to the government rather than the defendant."  United States v. Reumayr, 530 F.Supp.2d 1200, 1207 (D.N.M. 2007).

Attempting to attribute blame for the delay to defendant, the government argues that she failed to provide any documentation to support her testimony that she resided at the same address since 2012.  Government's Post-Hearing Memorandum of Law [543], p. 21.  However, it is not defendant's burden to establish that the delay was unjustified.  Instead, "[t]he government bears the burden of justifying the delay in bringing a defendant to trial"  United States v. Claxton, 766 F.3d 280, 294 (3d Cir. 2014), and having failed to introduce any evidence that defendant actively sought to avoid detection, much less that it performed any due diligence in attempting to locate her, I conclude that the delay remains attributable to the government.

Whereas "[a] deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government . . . . [a] more neutral reason such as negligence . . . should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." Barker, 407 U.S. at 531. "Cases of government negligence have typically involved the failure to make *any* 'serious effort' at investigation." Moreno, 789 F.3d at 80 (emphasis in original). This case squarely falls within this category. While the government points to the fact that the arrest warrant was promptly entered into the NCIC database (government's Response [492], p. 9, ¶16), "[e]ntering a criminal defendant's name into a database is a routine matter and does not satisfy the government's diligence obligation". United States v. Fernandes, 618 F.Supp.2d 62, 70 (D.D.C. 2009), appeal dismissed, 2009 WL 3571296 (D.C. Cir. 2009). The Government points to no other efforts it undertook to locate or contact defendant despite having her telephone number since November 2012 and having access to her sister, who had provided the telephone number during a proffer session.

The government explains that it did not seek defendant's extradition because it was "believed, based upon discussions with Tara Smith's counsel, that there was a possibility the defendant was going to turn herself in". Government's Post-Hearing Memorandum of Law [543], p. 20). Yet, inexplicably, it offered no evidence of these discussions at the hearing or elsewhere. In any event, even crediting that explanation, it only explains why the government did not initially seek extradition. No explanation is offered for why it did not seek extradition in the ensuing year when defendant had not turned herself in. While the government notes that the extradition process "is extremely time consuming, complex, and can take years" (government's Post- Hearing

Memorandum of Law [543], p. 21), this did not hinder it from seeking the extradition of a number of the co-defendants.

"[E]ven if the government acted negligently, negligence does not weigh in favor of the defendant unless it actually lengthened the delay. That is because negligence is not a 'reason for the delay'. . . unless there is a causal connection. Thus, delay cannot be attributable to a failure of diligence if diligence would have been futile." Moreno, 789 F.3d at 80 (*quoting* Barker, 407 U.S. at 530). Since defendant promptly surrendered when the government contacted her using the telephone number it possessed since November 2012, any earlier exercise of diligence likely would not have been futile. Therefore, this factor weighs in defendant's favor.

However, I disagree with defendant that this factor strongly weighs against the government, since there is nothing in the record before me to establish that the delay was attributable to anything other than the government's negligence. While defendant points to the government's decision not to seek her extradition as evidencing that it deliberately delayed its prosecution of defendant in bad faith (defendant's Post-Hearing Memorandum of Law [545], pp. 5-6), I disagree. In fact, it is likely that the government, which will bear the burden of proof at trial, will more heavily bear the negative consequences of the delay. *See* Barker, 407 U.S. at 521.

## C.    Assertion of Speedy Trial Rights

"The defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." Barker, 407 U.S. at 531-32. Therefore, a "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." Id. at 532.

The Supreme Court has rejected a "rule that a defendant who fails to demand a speedy trial forever waives his right". Id. at 528.  Under the Sixth Amendment, "the primary burden [is] on the courts and the prosecutors to assure that cases are brought to trial." Id. at 529. Nevertheless, "a defendant has some responsibility to assert a speedy trial claim" (id.), since "[t]he Speedy Trial Clause primarily protects those who assert their rights, not those who acquiesce in the delay - perhaps hoping the government will change its mind or lose critical evidence." United States v. Aguirre, 994 F.2d 1454, 1457 (9th Cir.), cert. denied, 510 U.S. 1029 (1993). *See also* United States v. Schreiber, 535 F. Supp. 1359, 1363 (S.D.N.Y. 1982) ("The speedy trial requirements should not operate to reward a recalcitrant and reluctant defendant").

Thus, "[w]ere [it] true [that the defendant knew of his indictment years before his arrest], Barker's third factor, concerning invocation of the right to a speedy trial, would be weighed heavily against him." Doggett, 505 U.S. at 653.  *See also* Blanco, 861 F.2d at 780 ("Since the bulk of the delay of which Blanco is complaining occurred between her indictment . . . and her arrest . . . and she only asserted her claim after her arrest, this factor does not help her case");  Aguirre, 994 F.2d at 1457 ("Aguirre knew of the charges against him, yet failed to answer them . . . further undermines his speedy trial claim"); Solomon,  1996 WL 399814 at *4 ("[B]ecause the delay complained of occurred between the filing of the Indictment and defendant's arrest, and because Shahid asserted her speedy trial right after her arrest, this factor does not help her motion"); United States v. Ramos, 420 F.Supp.2d 241, 250 (S.D.N.Y. 2006), aff'd, 264 Fed. Appx. 57 (2d Cir.) (Summary Order), cert. denied, 553 U.S. 1102 (2008) ("Where pre-arrest delay is complained of, and the defendant 'only asserted [his] claim after [his] arrest, 'this factor does not help [his] case'"); United States v. Love,  859 F.Supp. 725, 738 (S.D.N.Y.

1994), aff'd, 100 F.3d 942 (2d Cir.), cert. denied, 519 U.S. 951 (1996) ("In light of the fact that Love apparently was aware that he was wanted in connection with this Indictment, Love's failure to assert his right to a speedy trial weighs against his motion"); United States v. Dardoon, 2013 WL 4083629, *6  (C.D.Cal. 2013) ("Because defendant apparently knew of the charges against him, yet failed to answer them, he bears significant responsibility for the delay he encountered in obtaining a trial. Therefore, the Court finds that defendant's claim that his speedy trial rights were violated is substantially diminished, as he knowingly delayed many years in asserting his right to a speedy trial").[8]

By contrast, "where the defendant is unaware of the indictment, he cannot 'be taxed for invoking his speedy trial right only after his arrest'".  United States v. Ostroff,  340 F.Supp.2d 362, 367 (S.D.N.Y. 2004) (quoting Doggett, 505 U.S. at 654). See United States v. Villarreal, 613 F.3d 1344, 1354 (11th Cir. 2010), rehearing en banc denied, 409 Fed. Appx. 315 (11th Cir. 2010) ("[A] . . . defendant's 'failure to make a demand can hardly be counted against the defendant during those periods when he was unaware that charges had been lodged against him.'" quoting 5 Wayne R. LaFave, et al., Criminal Procedure, § 18.2(d) (3d ed. 2007)). Here, defendant argues that

---

[8]       Although some of these cases involve defendants who actively attempted to evade capture (see, e.g., Blanco, supra), others do not. See, e.g., Aguirre, supra; Solomon, supra.  However, at least one case appears to draw a distinction between active and passive fugitive status in assessing the third Barker factor.  See  United States v. McDonald, 172 F.Supp.2d 941, 949-50 (W.D.Mich. 2001) ("[T]he Court finds that the Defendant in fact timely asserted his right to a speedy trial. The Defendant timely asserted his right to speedy trial by motion soon after being arraigned on the charges in the United States. Furthermore, Defendant's pre-arraignment conduct does not detract from the Court's conclusion that he timely asserted his right to a speedy trial. The Defendant in this case never fled the United States to escape arrest. He never secreted himself in the Bahamas to escape extradition").

"[t]he record is devoid of any facts to suggest that the [she] was aware of the indictment or that if she was aware of it, that she knew what it was." Defendant's Post-Hearing Memorandum of Law [542], p. 5.

"It is within the province of the district court as the trier of fact to decide whose testimony should be credited. . . . And as trier of fact, the judge is entitled, just as a jury would be . . . to believe some parts and disbelieve other parts of the testimony of any given witness." Krist v. Kolombos Rest. Inc., 688 F.3d 89, 95 (2d Cir. 2012). Having observed and considered defendant's testimony,  I simply do not credit her claim that she was unaware of the arrest warrant until SA Needham called her in June 2014. [519], p. 14.   Notwithstanding her testimony to the contrary, the fact that defendant "was charged in the very same indictment as [a sibling], who was arrested within a week of the indictment . . . .  strongly indicates that [the defendant]  knew of both the arrest warrant and the indictment". Morales v. United States, 2011 WL 3423919,  *4 (S.D.N.Y. 2011).

Moreover, Ms. Humphrey testified that she told defendant that she was "on the same list of suspects" as her sister and that defendant acknowledged seeing the case on the news. [519], pp. 81-82, 90, 99-100.  When considered in connection with the cessation of defendant's travel into the United States from 2012 to her arrest, this is strongly suggestive of her knowledge that she was wanted by United States authorities.

Defendant further argues that "[t]here is nothing in the record from which it can be inferred that even if she obtained some casual knowledge of the existence of the indictment, she would have understood that it signaled the commencement of a criminal action." Defendant's Post-Hearing Memorandum of Law [542], p. 5. This argument is not persuasive. *See* United

States v. Tchibassa, 452 F.3d 918, 926 (D.C. Cir. 2006), cert. denied, 549 U.S. 1298 (2007) ("Tchibassa may not have known that a formal indictment had issued - or even that one was necessary - but if he was aware that charges were pending against him . . .  his failure to make any effort to secure a timely trial on them (and his apparent desire to avoid one) manifests a total disregard for his speedy trial right"); Fernandes, 618 F.Supp.2d at 72 ("even if defendant did not know the specifics of the indictment, awareness of charges, coupled with a failure to assert a speedy trial right while abroad in India, is enough to tip this factor somewhat against him").

Recognizing that a "defendant's timely assertion of his right to a speedy trial carries more weight in a proceeding that contests post-arrest delay than in a proceeding that contests the delay between indictment and arrest" Ramos, 420 F.Supp.2d at 250, I conclude that this factor weighs against defendant.

**D.     Prejudice**

This factor is significant. "Although a showing of prejudice is not a prerequisite to finding a Sixth Amendment violation, courts generally have been reluctant to find a speedy trial violation in the absence of genuine prejudice." Cain,  671 F.3d at 297.  Prejudice is "assessed in the light of the interests of defendants which the speedy trial right was designed to protect". Barker, 407 U.S. at 532.  These interests include: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired". Id.

Defendant points to the third interest, arguing her "ability to defend against these charges was prejudiced by the government's delay".  Defendant's Post-Hearing Reply

-17-

Memorandum of Law [545], pp. 10-11.  This is "the most serious" of the interests "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown." <u>Barker</u>, 407 U.S. at 532.

In establishing prejudice, defendant argues that "[i]t . . . will be difficult to locate witnesses many years after the relevant time  period" and  "[c]onversations that it will be claimed she had with co-defendants are difficult to challenge many years after the conversations have taken place."  Defendant's Post-Hearing Reply Memorandum of Law [545], p. 11.  Defendant's generalized claims fall short of establishing "a particularized showing of prejudice". <u>Moreno</u>,  789 F.3d at  81.[9] <i>See</i> <u>Castro v. Ward</u>,  138 F.3d 810, 820 (10th Cir.), <u>cert</u>. <u>denied</u>, 525 U.S. 971 (1998) ("Mr. Castro's general allegation that the passage of time made it more difficult for him to present a defense, he points to no specific prejudice he claims he suffered from the delay. He has not claimed that any specific witness or evidence was somehow rendered unavailable or less

---

[9]  Defendant relies upon the Second Circuit's recent decision in <u>United States v. Bert</u>, ___ F.3d ___, 2015 WL 5254882, *9 (2d Cir. 2015), which dismissed an Indictment, with prejudice, for a Speedy Trial Act violation of 11 months.  However, she acknowledges that <u>Bert</u> addressed the distinct issue of an incarcerated defendant's post-arraignment delay in violation of the Speedy Trial Act, rather than  pre-arrest delay in violation of the Sixth Amendment. Defendant's Post-Argument Submission [551], pp. 1, 3. <i>See</i>  <u>United States v. Thomas</u>, 305 Fed, App'x. 960, 963 (4th Cir.2009), <u>cert</u>. <u>denied</u>, 558 U.S. 889 (2009) ("A criminal defendant's right under the [Speedy Trial] Act is separate and distinct from his Sixth Amendment right to a speedy trial");  <u>United States  v. Payden</u>,  620 F.Supp. 1426, 1430 n. 8  (S.D.N.Y. 1985) ("[C]ompliance with the [Speedy Trial] Act presents a question of statutory interpretation, while satisfying the sixth amendment guarantee is guided by <u>Barker</u>").  These distinctions are borne out by comparing <u>Bert</u> with <u>Moreno</u>, in which the Second Circuit concluded that a comparable ten-month period of post-indictment/pre-arrest delay attributable to the government did not sustain a Sixth Amendment claim. 789 F.3d at 82.

persuasive because of the passage of time").  Significantly, "[d]elay 'does not per se prejudice the accused's ability to defend himself' because the government bears the burden of proof when the case comes at last to trial."  Moreno, 789 F.3d at 81 (quoting Barker, 407 U.S. at 521). Indeed, "fading memories often 'work to the accused's advantage'." Id.  In any event, the government represents - and defendant does not dispute - that the evidence in this case "is largely documentary and is not the sort that becomes especially unreliable with the passage of time". Government's Post-Hearing Memorandum of Law [543], p. 32.

Defendant also argues that seven co-defendants thus far have pled guilty and "[h]ad the Defendant been timely informed of the charges against her, she would  have been in a position to meaningfully investigate[] the case and likely been able to, through counsel, have learned information from co-defendants prior to their entering into [cooperation] agreements with the government or entering guilty pleas".  Defendant's Post-Hearing Reply Memorandum of Law [545], p. 11.  However, Barker "prejudice is concerned with impediments to the ability of the defense to make its own case (e.g., if defense witnesses are made unavailable due to the government's delay); the opportunity for the prosecution to prepare for trial does not, on its own, amount to prejudice to the defense". United States v. Abad,  514 F.3d 271, 275 (2d Cir.), cert. denied, 555 U.S. 827 (2008). See United States v. Alvarez, 541 Fed.Appx. 80, 84 (2d Cir. 2013) (Summary Order) ("The defendant "claims that but for the prolonged delay, [a] co-defendant-turned-cooperating-witness . . . would not have been available to provide devastating evidence against [him]. Even if true, this is not the sort of prejudice contemplated by Barker's fourth factor").

Alternatively, defendant argues that "even in those cases where pretrial delay is the result of government negligence rather than bad faith, the delay is not automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him". Defendant's Post-Hearing Reply Memorandum of Law [545], p. 11 (*citing* Doggett, 505 U.S. at 657). I agree that "a pre-arrest delay of sufficient length can lead to 'presumptive prejudice' even absent 'affirmative proof of particularized prejudice.'" Moreno, 789 F.3d at 82 (*quoting* Doggett, 505 U.S. at 655 56).[10] However, "Doggett cautioned that 'such presumptive prejudice cannot alone carry a Sixth Amendment claim' . . . and that 'to warrant granting relief, negligence unaccompanied by particularized trial prejudice must have lasted longer than negligence demonstrably causing such prejudice'" Id. (*quoting* Doggett, 505 U.S. at 657). *See* United States v. Zavisic, 2013 WL 6145751, *9 (W.D.N.Y. 2013) (Arcara, J./Schroeder, J.) (dismissing the indictment under the Sixth Amendment where an approximately 54-month unexplained delay in effectuating the defendant's arrest "'intensified' the 'presumption that pretrial delay has prejudiced the' defendant"); United States v. Washnuk, 2013 WL 2425122, *5 (W.D.N.Y. 2013) (Arcara, J./Scott, M.J.) (same; 51-month delay).

As the Second Circuit recently noted, it is "exceedingly rare" that delay alone supports a showing of prejudice. Id. (*citing* Doggett, 505 U.S. at 658 (concluding that an affirmative showing of actual prejudice was not necessary given that the length of delay was six years - six times as long as that generally sufficient to trigger application of the Barker factors). The approximately two-year delay here falls short of the duration necessary to place it in that

---

[10] "Presumptive prejudice" is used to describe "two different concepts" - the period of delay necessary to trigger the Barker analysis and the period of delay that relieves a defendant of the burden of demonstrating actual prejudice. *See* Moreno, 789 F.3d at 82, n. 10.

category.  *See* Solomon, 1996 WL 399814 at  *4 ("[T]he 20- month delay here only barely

'stretches beyond the bare minimum needed to trigger judicial examination of the claim.' . . .  The

length of the delay, therefore, does not on its own greatly advance the defendant's showing of

prejudice at trial").  *Compare with* Ingram, 445 F.3d at 1340 (two year pre-arrest delay; concluding

that since the "first three Barker factors all weigh heavily against the Government", the defendant

"need not demonstrate actual prejudice resulting from the delay").


**E.      Balancing of Factors**

"No one of these factors . . . is 'either a necessary or sufficient condition to the

finding of a deprivation of the right,'  and courts still must engage in a sensitive balancing process

whereby the conduct of *both* the prosecution and the defendant are weighed." Rayborn, 858 F.2d at

89 (*quoting* Barker, 407 U.S. at 530) (emphasis in original).  Barker's formulation "necessarily

compels courts to approach speedy trial cases on an *ad hoc* basis". Brillon, 556 U.S. at 91.

Therefore,  "it is almost impossible to say with precision exactly when a particular defendant's

speedy trial right has been violated." Rayborn, 858 F.2d at 88-89.

While the government's unexplained failure to undertake any effort to contact

or locate defendant until approximately two years after she was indicted is troubling, defendant

failed to assert her right to a speedy trial despite her knowledge of the pending charges, and has not

demonstrated any actual prejudice from the delay.  In close cases such as this, "reasonable minds

may disagree . . . on whether the balance of factors tips in favor of recognizing a violation of the

Speedy Trial Clause". Ray,  578 F.3d at 191.

On balance, I conclude that the scales tip against finding a Sixth Amendment speedy trial violation. Therefore, I recommend that defendant's motion to dismiss the Indictment be denied.

## CONCLUSION

For the following reasons, I recommend that defendant's motion to dismiss the Indictment on Sixth Amendment speedy trial grounds (Brown Affirmation [475], Point I) be denied. Unless otherwise ordered by Judge Wolford, any objections to this Report and Recommendation must be filed with the clerk of this court by November 13, 2015 (applying the time frames set forth in Fed. R. Crim. P. ("Rules") 45(a)(1)(C), 45(c), and 59(b)(2)). Any requests for extension of this deadline must be made to Judge Wolford. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b)(2) of this Court's Local Rules of Criminal Procedure, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority", and pursuant to Local Rule 59(b)(3), the objections must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not

raised to the Magistrate Judge".  Failure to comply with these provisions may result in the district

judge's refusal to consider the objection.

**SO ORDERED**

DATED:        October 27, 2015

                                        /s/ Jeremiah J. McCarthy
                                         JEREMIAH J. MCCARTHY
                                          United States Magistrate Judge